772 F.2d 451
 11 Soc.Sec.Rep.Ser. 102, Medicare&Medicaid Gu 34,889
GRANVILLE HOUSE, INC., Appellee,
v.
The DEPARTMENT OF HEALTH, EDUCATION AND WELFARE, Appellant,
and
Arthur E. Noot, as Commissioner of Public Welfare for the
State of Minnesota, Appellee.
 No. 84-5195.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 13, 1985.
Decided Sept. 6, 1985.
 
 Carolyn Cozad Hughes, Chicago, Ill. (HHS), for appellant.
 John M. Burman, Asst. Atty. Gen., St. Paul, Minn., and Warren Eustis, Minneapolis, Minn., for appellees.
 Before HEANEY, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 HEANEY, Circuit Judge.
 
 
 1
 This case and a related lawsuit, Minnesota v. Heckler, 718 F.2d 852 (8th Cir.1983), have each been before this Court once before. The instant case involves the issue of whether alcoholism is a mental disease. The case was consolidated with Minnesota, which involves the issue of whether, and under what circumstances, an intermediate care facility (ICF) is an institution for mental disease (IMD). At the heart of both cases is the broader issue of what health care services are reimbursable by the Medicaid program under the Social Security Act.
 
 
 2
 Both cases were filed in federal district court in the District of Minnesota. After the filing of Granville, the district court consolidated it with Minnesota, and later severed them. This Court issued an opinion in the appeal of Granville, 715 F.2d 1292 (8th Cir.1983), remanding the matter back to the Department of Health and Human Services (HHS)[1] Grant Appeals Board. Shortly thereafter, this Court issued an opinion in Minnesota also remanding to HHS.
 
 
 3
 HHS now appeals from the district court's decision following the Grant Appeals Board order in the remand of Granville. We conclude that the district court improperly ruled on the broader ICF-IMD question of Minnesota, and improperly ordered HHS to conduct notice and comment rulemaking. We therefore reverse and remand for further proceedings before HHS.
 
 
 4
 I. PROCEDURAL HISTORY.
 
 
 5
 Although we discussed much of the background to Granville and Minnesota in the respective prior opinions, see Granville, 715 F.2d at 1294-97, and Minnesota, 718 F.2d at 854-56, we find it necessary to review the procedural history of both cases in order to place the present appeal in the proper context.
 
 
 6
 A. The Granville Litigation.
 
 
 7
 Granville House, Inc., a nonprofit corporation operating three residential chemical dependency treatment programs, filed this action in May, 1980, against HHS and the Minnesota Commissioner of the Department of Public Welfare.[2] Granville sought a declaration that the classification of alcoholism[3] as a mental disease is arbitrary and capricious, and that the treatment of alcoholism in a certified ICF qualifies for federal financial participation in Medicaid. Granville did so because under 42 U.S.C. Sec. 1396d(a), there is no federal financial participation for medical services provided to persons age twenty-one to sixty-five in an IMD. Granville's underlying motivation is its frustration with its inability since the late 1970's to meet its primary mission--to treat indigent victims of alcoholism. See Granville, 715 F.2d at 1294-95.
 
 
 8
 The State of Minnesota initially defended the lawsuit, but then filed a cross-claim against HHS and moved that Granville be consolidated with Minnesota. The State also sought a declaration that HHS's interpretation of the Medicaid statute to preclude coverage for alcoholism treatment provided to otherwise eligible Medicaid recipients in ICFs on the basis that the facilities are IMDs is contrary to the Social Security Act and other HHS regulations. The district court consolidated the cases and then issued separate opinions.
 
 
 9
 In Granville, the district court ruled that HHS's classification of alcoholism as a mental disease is arbitrary and capricious, saving the issue posed by the State's cross-claim for its opinion in Minnesota. HHS then appealed to this Court. We held that HHS had not adequately considered the nature of alcoholism as a mental disease, but that, nevertheless, the district court had acted prematurely because there had been no final decision by HHS on the issue. Granville, 715 F.2d at 1303. We remanded to the district court with instructions to remand to the Grant Appeals Board of HHS to determine "whether otherwise-eligible residents of Granville's facilities (which have been certified as intermediate care facilities) are eligible for Medicaid under 42 U.S.C. Sec. 1396 et seq." Id. at 1304. We specified that the Grant Appeals Board could conduct further hearings and that the district court would retain jurisdiction pending the outcome of the Board's decision. We also specified that the district court would, after reviewing the Board's decision, make such further rulings as it deemed necessary which would be appealable to our Court. Id.
 
 
 10
 The Grant Appeals Board on remand allowed the State to participate in the proceedings as an interested party. The Board specified, however, that the broader ICF-IMD issue of Minnesota was not to be litigated in that proceeding; only the narrower question of whether alcoholism is a mental disease would be addressed, although it would be considered in light of this Court's opinion in Minnesota (discussed infra ). After conducting further hearings with expert testimony from Granville and HHS, the Board concluded that:
 
 
 11
 HCFA [the Health Care Financing Administration of HHS] may not reasonably categorize Granville's facilities as IMDs based merely on the predominance in those institutions of persons diagnosed and treated for alcoholism. Given the uniqueness and complexity of the disease and its treatment, we conclude that HCFA may determine IMD status for an institution treating alcoholism only on the basis of more definitive rules or guidelines which enable HCFA and its constituents to better evaluate what types of alcoholism treatment are, and are not, conclusive of IMD status. Nothing in our decision precludes HCFA from deciding that Granville's facilities are ineligible for Medicaid assistance on bases other than IMD status.
 
 
 12
 The case then came back to the district court, with the State again intervening. The district court adopted the Grant Appeals Board's decision, but went further and enjoined HHS from denying Medicaid funds to any ICF in Minnesota on the grounds that it is an IMD, until HHS promulgates rules under the notice and comment procedures of the Administrative Procedure Act (APA) which establish "meaningful standards which can be used to determine whether the facilities of Granville House or any other ICFs are IMDs."
 
 
 13
 B. The Minnesota Litigation.
 
 
 14
 The State of Minnesota filed an action contesting HHS's disallowance of Medicaid participation for three long-term mental health care facilities (which had been certified as ICFs) which the Secretary had determined were IMDs. HHS made this decision based on unpublished interpretive guidelines used to determine the "overall character" of a facility which focused on the diagnoses of the facility's residents. The State argued that the term IMD refers only to mental hospitals, not to long-term care facilities, and that the treatment provided, not the diagnoses of patients, controls the determination of whether a facility is an IMD.
 
 
 15
 The district court affirmed HHS's position that facilities other than mental hospitals can be IMDs,[4] but reversed HHS's disallowance of Medicaid participation for the facilities in question. The Court held that the term IMD refers only to institutions which provide long-term care for the mentally ill through on-site psychiatric treatment. It held that HHS must consider the nature of the treatment provided, not merely the diagnoses of the patients, in determining whether a facility is an IMD. Concluding that the ICFs at issue were not IMDs, the district court ordered the disallowed Medicaid funds returned by HHS.
 
 
 16
 HHS appealed to this Court, and we affirmed that HHS had erroneously employed criteria which focused on diagnoses of patients, and that HHS must consider the nature of treatment provided in determining IMD status. 718 F.2d at 866. We thus held that the Grant Appeals Board's decision upholding the disallowance of Medicaid participation to the facilities at issue was based on insufficient factfinding and consequently not supported by substantial evidence. Id. at 863. We also held, however, that the district court was limited to prospective relief, lacking jurisdiction to order HHS to return the disallowed funds to the State. Id. at 857. We remanded to HHS for further proceedings.
 
 
 17
 After remand, the Grant Appeals Board ordered the disallowed funds to be returned to the State. HCFA decided to conduct a new audit of the facilities under revised criteria which it maintains utilize the "treatment standard" of our decision in Minnesota. The Grant Appeals Board noted in its decision that the State will have a full opportunity to contest any new adverse findings before the Board. The matter is still pending before HHS.
 
 
 18
 C. Issues on Appeal.
 
 
 19
 HHS now brings this appeal from the district court's order in Granville. The appeal essentially raises the following issues:
 
 
 20
 1. Whether the district court erred in failing to dismiss the action for lack of a case or controversy under Article III;
 
 
 21
 2. Whether the district court erred in ordering HHS to develop new rules and standards, pursuant to the notice and comment rulemaking procedures of the APA, for determining whether an ICF is an IMD; and
 
 
 22
 3. Whether the district court erred by ruling on the broader ICF-IMD issue of the Minnesota litigation.
 
 
 23
 II. DISCUSSION.
 
 
 24
 A. Jurisdiction.
 
 
 25
 HHS contends that the district court erred in failing to dismiss this action because there is no case or controversy under Article III. In determining the existence of a case or controversy, the question is whether the facts alleged under all the circumstances show that there is a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant a judicial decision. Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975).
 
 
 26
 HHS's argument here takes several forms. First, it again argues that Granville lacks standing. We thoroughly addressed this contention and rejected it in our prior opinion, Granville, 715 F.2d at 1297-99, and our decision on this issue is the law of the case. See Liddell v. Missouri, 731 F.2d 1294, 1304-05 (8th Cir.), cert. denied, --- U.S. ----, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984).
 
 
 27
 Second, HHS argues that the dispute is moot because the latest Grant Appeals Board decision resolved the matter in Granville's favor.[5] A close examination of the Board's decision reveals, however, that the controversy engendering this litigation has by no means been laid to rest. The Board did not decide whether alcoholism is a mental disease, or thus whether Granville residents are eligible for Medicaid. It only decided that HHS's present guidelines for determining IMD status are inadequate and that HCFA cannot deny facilities such as Granville IMD status without first providing "more definitive rules or guidelines which enable HCFA to better evaluate what types of alcoholism treatment are, and are not, conclusive of IMD status." Further, the Board specifically stated that it found a substantial question as to whether Granville's AA (Alcoholics Anonymous) treatment services could properly be considered ICF services. The Board thus concluded that nothing in its decision "precludes HCFA from deciding that Granville's facilities are ineligible for Medicaid assistance on bases other than IMD status." Simply put, it appears that after five years, this litigation to resolve Granville's Medicaid eligibility has advanced very little, and that the controversy is still very much alive.
 
 
 28
 Third, HHS contends that because Granville is presently receiving Medicaid payments, any threat of future disallowance is merely a threat of future injury and as such does not yet present a dispute ripe for review. In our prior opinion, we considered a similar ripeness argument by HHS and held that the district court should not have ruled without the benefit of a final decision from the Grant Appeals Board. Granville, 715 F.2d at 1299-1304. We declined to dismiss the case outright, however, because of the hardship to the parties, especially Granville, that such action would have created. Citing Abbott Laboratories v. Gardner, 387 U.S. 136, 152-54, 87 S.Ct. 1507, 1517-18, 18 L.Ed.2d 681 (1967), we concluded that dismissal would have a "sufficiently direct and immediate impact" on Granville in light of its substantial expenditures to gain certification and the inadequacy or futility of other procedural scenarios. Granville, 715 F.2d at 1303-04. We, therefore, specifically retained continuing jurisdiction over the case, instructing the district court to review the decision of the Grant Appeals Board and to make any further rulings it deemed necessary; any dissatisfied party could then, of course, appeal to this Court. Id. at 1304. We thus reject HHS's contention that the district court lacked jurisdiction, and in light of our disposition of the remaining issues, discussed infra, we conclude that a similar course is prudent at this stage as well. We likewise anticipate, based on representations made by HHS at oral argument, that the Medicaid payments to Granville will continue pending resolution of this case.
 
 
 29
 B. Propriety of Notice and Comment Rulemaking.
 
 
 30
 HHS argues that the district court erred in ordering it to develop rules and standards for determining IMD status pursuant to the notice and comment rulemaking procedures of the APA, 5 U.S.C. Sec. 553(b)-(e). The APA provides that agencies should promulgate rules pursuant to notice and comment procedures, but specifically excludes this requirement for "interpretive rules." Id. Sec. 553(b)(3)(A). HHS contends that the rules which the district court ordered here are "interpretive rules," and therefore exempt from the notice and comment requirement. We agree.
 
 
 31
 In our prior opinion, we acknowledged that the rules or guidelines at issue are interpretive, rather than legislative or substantive rules:
 
 
 32
 [T]he agency's decision to use the ICD's [International Classification of Diseases] classification scheme to further define the term "mental diseases" is not a regulation, but rather is simply an interpretation by the agency of a term contained in a regulation[.]
 
 
 33
 Granville, 715 F.2d at 1296.
 
 
 34
 This Court's opinion in Minnesota refers to the IMD guidelines as interpretive rules as well. 718 F.2d at 865.
 
 
 35
 Moreover, even if our earlier opinion did not dispose of this issue, it is clear that the IMD guidelines are not legislative rules, because Congress did not delegate to HHS the power to promulgate such guidelines which would carry the force of law. See Batterton v. Marshall, 648 F.2d 694, 701-02 (D.C.Cir.1980). Rather, the guidelines are an interpretation of the terms "IMD" and "mental disease" in existing regulations, and thus "carry no more weight on judicial review than their inherent persuasiveness commands." Batterton, 648 F.2d at 702. Nor can we justify, at least in the circumstances of this case, imposing notice and comment rulemaking procedures as an exercise of common law authority separate from the APA. See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., 435 U.S. 519, 543-44, 98 S.Ct. 1197, 1211-12, 55 L.Ed.2d 460 (1978); Cabais v. Egger, 690 F.2d 234, 237-38 & nn. 2-9 (D.C.Cir.1983). But cf. K. Davis, Administrative Law Treatise, Secs. 6:31, 6:37 (1978) (courts have common law authority to order notice and comment rulemaking for interpretive rules notwithstanding Vermont Yankee ). We thus conclude that the district court erred in ordering HHS to develop further IMD guidelines through notice and comment rulemaking.
 
 
 36
 Nevertheless, we note that HHS may proceed using notice and comment procedures. In fact, the Grant Appeals Board provided HCFA with the option of utilizing notice and comment rulemaking to develop the new guidelines or standards. Given the immense implications of the issue for all parties, and the importance of the underlying issue of Medicaid eligibility for indigent victims of alcoholism, notice and comment rulemaking may be the most efficient and thorough manner of proceeding.
 
 
 37
 C. Propriety of Ruling on the ICF-IMD Issue.
 
 
 38
 HHS argues that the district court's order erroneously decided the broader issues of Minnesota, concerning the nature of ICFs and IMDs, which were not before it. In our prior opinion in Granville, we stated:
 
 
 39
 After granting the motion to consolidate, the district court subsequently held in the companion case that by "institution for mental disease" Congress meant those institutions which provided primarily long-term care for the mentally ill by administering psychiatric treatment for its residents on the premises. * * * An appeal by HHS from that decision is presently pending before a different panel of this Court. * * *
 
 
 40
 The narrower question presented in the instant case is whether chemical dependency is properly characterized as a mental disease under the Medicaid statute.
 
 
 41
 Granville, 715 F.2d at 1296, n. 5 (citations omitted).
 
 
 42
 We remanded this issue to HHS, and the Grant Appeals Board emphasized that it was only considering whether alcoholism is a mental disease.
 
 
 43
 In Minnesota, this Court ruled on the broader IMD question and remanded to HHS, where the matter is still pending. Minnesota, 718 F.2d at 866. We thus hold that the district court did not have jurisdiction over the Minnesota proceeding and that it erred in enjoining HHS from denying Medicaid funds to any ICF in Minnesota on the ground that it is an IMD until HHS promulgates new IMD standards.
 
 
 44
 III. CONCLUSION.
 
 
 45
 The judgment of the district court is reversed and the matter is remanded to it, with directions to remand to HHS. On remand, HCFA shall develop guidelines which, pursuant to the Grant Appeals Board decision, will "enable HCFA and its constituents to better evaluate what types of alcoholism treatment are, and are not, conclusive of IMD status." Any disputes concerning these new guidelines will be appealable to the Grant Appeals Board. Any party may resubmit the case to the district court after the Grant Appeals Board renders a decision. The district court's decision will of course be appealable to this Court.
 
 
 46
 The Minnesota case is still on remand before HHS. On remand, the Grant Appeals Board will then have the opportunity to rule on HHS's revised ICF-IMD criteria, which will of course be subject to judicial review as well.
 
 
 47
 Accordingly, the case is reversed and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 HHS changed the name of its agency after this action was filed
 
 
 [2]
 The name of this agency was later changed to the Department of Human Services
 
 
 [3]
 The parties have stipulated that the term "alcoholism" is used in this litigation to refer to all forms of chemical dependency
 
 
 [4]
 On May 20, 1985, the Supreme Court issued an opinion in Connecticut v. Heckler, --- U.S. ----, 105 S.Ct. 2210, 85 L.Ed.2d 577 (1985), holding that an ICF may be an IMD and the terms are not mutually exclusive, rejecting the State of Connecticut's argument to the contrary. While the Supreme Court affirmed a Second Circuit decision, 731 F.2d 1052 (2d Cir.1984), which it stated was in conflict with our decision in Minnesota v. Heckler, the Supreme Court's decision has no effect on the narrower issue of alcoholism in the Granville litigation
 
 
 [5]
 We note that since the date of the district court's order, the State has begun making Medicaid payments to Granville